# ORIGINAL

1

FREDERICK A. BLACK
2   United States Attorney
MARIVIC P. DAVID
3   Assistant U.S. Attorney
Sirena Plaza Suite 500
4   108 Hernan Cortez Avenue
Hagatna, Guam 96910
5   Telephone: (671) 472-7332
Telecopier: (671) 472-7334
6

Attorneys for United States of America
7

**FILED**
DISTRICT COURT OF GUAM

MAR 31 2003

MARY L. M. MORAN
CLERK OF COURT

11

8           IN THE UNITED STATES DISTRICT COURT

9              FOR THE TERRITORY OF GUAM

10

11   UNITED STATES OF AMERICA,          )    CIVIL CASE NO. 02-00028
                                        )
12                  Plaintiff,          )
                                        )    **UNITED STATES' RESPONSE**
13                                      )    **TO DEFENDANT'S MOTION**
            vs.                         )    **TO CHANGE VENUE**
14                                      )
                                        )
15   JAMES F. GRIFFITH, D.D.S.,         )
                                        )
16                                      )
                  Defendant.           )
17   _____)

18          The Plaintiff, United States of America, hereby files its Response to Defendant's Motion

19   to Change Venue which Motion Defendant personally served at Plaintiff's place of business on

20   March 4, 2003:

21   I.     Background

22          This civil action was filed by Plaintiff on September 30, 2002, to collect a debt due its

23   agency, the U.S. Department of Health and Human Services, from the above-referenced

24   Defendant, James F. Griffith, D.D.S., when he was a former officer in the Commissioned Corps

25   of the Public Health Service ("PHS").  This case was filed in this district since Defendant was

26   employed with Gentlecare Dental Associates, P.C., 278 South Marine Drive, Hengi Plaza, Suite

27   102, Tamuning, Guam, 96911, and subject to personal jurisdiction.  28 U.S.C. § 1391(a).

28

1    In his Answer filed December 5, 2002, Defendant denied responsibility for the debt, and

2    claimed that the instant Complaint be "forwarded to federal court in Alaska" where he filed suit

3    in connection with his employment with the PHS. (See Def. Exhibit C of Answer: (1) James

4    Griffith, D.D.S v. Yukon Kuskowkwim Health Corp. ("YKHC"), Case No. 4BE-01-38 CI,

5    Notice of Filing Removal of a Civil Action, in the Fourth Judicial District at Bethel, Superior

6    Court for the State of Alaska; (2) Griffith v. YKHC, Case No. F01-0004-CV, Notice of

7    Removal, in the U.S. District Court of Alaska; and (3) Griffith v. YKHC, Case No. 4BE-01-38

8    CI, Complaint for Damages, in the Fourth Judicial District at Bethel, Superior Court for the State

9    of Alaska).

10       In a written Order filed April 26, 2001, the Honorable H. Russel Holland, District of

11   Alaska, dismissed without prejudice the tort claims against the U.S. in  Griffith v.YKHC and

12   United States of America, Case No. F01-0004-CV, in the U.S. District Court of Alaska. (See

13   attached Government Exhibit A). In a written Order filed December 6, 2001, Judge Holland

14   dismissed with prejudice the contract claims against YKHC, and a Judgment that dismissed

15   Griffith's amended complaint with prejudice was filed on December 7, 2001, in Griffith

16   v.YKHC, Case No. F01-0004-CV, in the U.S. District Court of Alaska. (See attached

17   Government Exhibits B and C).

18   II.    Motion to Change Venue

19       Defendant now seeks to change venue to the U.S. District Court in Beaufort, South

20   Carolina. He claims that the most convenient forum for all parties involved is South Carolina

21   where he resides and work.

22       Title 28 U.S.C. § 1404(a) allows a district court to transfer any civil action to a district

23   where it might have been brought for the convenience of the parties and witnesses and in the

24   interests of justice. Stewart Org., Inc. v. Ricoh Corp, 487 U.S. 22, 29 (1988). Section 1404(a)

25   provides: "For the convenience of the parties and witnesses, in the interest of justice, a district

26   court may transfer any civil action to any other district or division where it might have been

27

28                                                              2

brought." 28 U.S.C. § 1404(a). Section 1404(a) places the decision of whether a motion for a change of venue should be granted within the sound discretion of the court. Stewart Org., Inc., 487 U.S. at 29. The moving party has the burden of proof and must make a convincing showing of the right to transfer. Florens Container v. Cho Yang Shipping, __ F.Supp. 2d __, 2002 WL 31939089, 2002 A.M.C. 2312, (N.D. Cal. Sept. 4, 2002)(NO. C 01-2226). The moving party seeking transfer cannot rely on vague generalizations as to convenience factors, but is obligated to identify key witnesses to be called and to present generalized statement of what their testimony would include. Id.

In this case, Defendant to date has provided only self-serving statements. For example, he provides no employment information yet he claims to now work in South Carolina.

III.   Locus of Operative Facts

Although this action involves a straightforward collection case, Defendant denies he is indebted to the United States. Even if, arguendo, Defendant no longer works or resides in this district, the actions which gave rise to this lawsuit took place in the District of Alaska. Transfer is also appropriate to the forum where the events giving rise to the action occurred, and where the record or other physical evidence is located. Id. The Defendant has failed to establish that the convenience of the witnesses factor weighs in favor of transferring this action to South Carolina, or that such transfer would better serve the interests of justice.

Based on the foregoing, the defendant's motion should be denied.

RESPECTFULLY SUBMITTED this 31st day of March 2003.


                                        FREDERICK A. BLACK
                                        United States Attorney
                                        Districts of Guam and CNMI


                        By:     _____
                                        MARIVIC P. DAVID
                                        Assistant U.S. Attorney


3

FILED

APR 2 6 2001

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

By _____ Deputy

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

JAMES GRIFFITH,           )
                          )
                Plaintiff, )
                          )
        vs.               )
                          )
YUKON KUSKOKWIM HEALTH CORP. and )
UNITED STATES OF AMERICA,  )
                          )        No. F01-0004-CV (HRH)
                Defendants. )
                          )

## O R D E R

## United States' Motion to Dismiss[1]

Defendant United States (Government) moves to dismiss plaintiff's tort claims for lack of subject matter jurisdiction. Plaintiff opposes the motion. Oral argument has not been requested and is not deemed necessary.

## Introduction

To sue the Government under the Federal Tort Claims Act (FTCA), a plaintiff must first file an administrative claim with the appropriate federal agency. Plaintiff here has not done so, but argues that he does not need to because: (1) his claims are against

---

[1]    Clerk's Docket No. 8.

- 1 -

GOVERNMENT
EXHIBIT

A

an Alaska Native corporation, not the Government, and (2) the torts alleged in his complaint preclude application of the FTCA by means of Government substitution as defendant. For the reasons set forth below, the court concludes that it must dismiss plaintiff's tort claims on jurisdictional grounds without prejudice.

### Facts

Plaintiff James Griffith, D.D.S., filed a state court lawsuit against the Yukon Kuskokwim Health Corporation (YKHC), alleging the following contract and tort causes of action: (1) wrongful termination; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) breach of the implied covenant of good faith and fair dealing; (5) negligence in the issuance of a reprimand; and (6) libel and slander.[2]

The Government substituted itself as the defendant to all of the tort claims alleged.[3] In doing so, the Government explained that by statute, YKHC, as an Indian contractor, is deemed to be part of the federal government as to tort claims which arise out of the contractual relationship with the federal government.[4] The Government also certified that YKHC was at all times relevant to plaintiff's claims fulfilling a contract with the federal government pur-

---

[2]  Plaintiff's complaint sets forth his claim for negligent issuance of reprimand under "Count Five" and then sets forth his claim for libel and slander under a second "Count Five."

[3]  See Notice of Partial Substitution and Motion to Amend Caption, Clerk's Docket No. 3.

[4]  Id. The Government uses the term "Tribal contractor" instead of the term "Indian Contractor" as used in the Indian Self-Determination and Education Assistance Act.

- 2 -

suant to "Pub. L. 93-638."[5] Finally the Government removed the case to this federal court.[6]

## Discussion

A motion to dismiss under Rule 12(b)(1) is predicated upon a court's lack of jurisdiction over the subject matter. Fed. R. Civ. P. 12(b)(1). Under the Federal Tort Claims Act (FTCA), a federal court lacks jurisdiction over tort claims against the Government unless the plaintiff has previously filed an administrative claim with the appropriate federal agency. 28 U.S.C. § 2401(b); Landreth By and Through Ore. v. United States, 850 F.2d 532, 533 (9th Cir. 1988), cert. denied, 488 U.S. 1042 (1989) (citing 28 U.S.C. § 2401(b) and stating that failure to file with the appropriate agency within two years of claim accrual is a jurisdictional defect).

Here, plaintiff has not filed an administrative claim with the appropriate federal agency, in this case the United States Department of Health and Human Services. However, plaintiff argues that he does not need to file an administrative claim because he is not suing the Government and because the Government cannot substitute itself for the YKHC under the circumstances of this case. Plaintiff is incorrect.

The Government has certified, and plaintiff does not dispute, that YKHC is an Indian contractor properly carrying out a

---

[5]    See Memorandum of Certification, Clerk's Docket No. 2.

[6]    See Notice of Removal, Clerk's Docket No. 1. The Government filed the documents at Docket Nos. 1, 2, and 3 simultaneously on September 16, 2000.

- 3 -

compact and funding agreement with the Indian Health Service, the Department of Health and Human Services, and the Bureau of Indian Affairs pursuant to the Indian Self-Determination and Education Assistance Act.[7] Because of its Indian contractor status, YKHC is by law deemed to be a federal entity with respect to tort claims resulting from the fulfillment of its contracts with federal entities. See Pub. L. No. 101-512, title III, § 314, Nov. 5, 1990, 104 Stat. 1959, as amended Pub. L. No. 103-138, Title III, § 308, Nov. 11, 1993, 107 Stat. 1416, reprinted in notes following 25 U.S.C. § 450f.[8]

The applicable statutory section (Section 314) provides in pertinent part that:

> With respect to claims resulting from the performance of functions during fiscal year 1991 and thereafter ... under a contract, grant agreement, or any other agreement or compact authorized by the Indian Self-Determination and Education Assistance Act of 1975 ... an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the ... Department of Health and Human Services while carrying out any such contract or agreement and its employees are deemed employees of the ... Service while acting within the scope of their employment in carrying out the contract or agreement: Provided, That after September 30, 1990, any civil action or proceeding involving such claims brought hereafter against any

---

[7] See also, Memorandum of Certification (wherein the United States Attorney certifies that he has read plaintiff's complaint and that YKHC was at all times relevant to the tort claims filed against it "carrying out a contract pursuant to Pub. L. 93-638"), Clerk's Docket No. 2.

[8] Part of the Indian Self-Determination and Education Assistance Act, Section 314, has not been codified into Title 25; its text appears only in the notes following 25 U.S.C. § 450f.

- 4 -

> tribe, tribal organization, Indian contractor
> or tribal employee covered by this provision
> shall be deemed to be an action against the
> United States and will be defended by the
> Attorney General and be afforded the full pro-
> tection and coverage of the Federal Tort Claims
> Act....

Id. Notably, Section 314 does not discriminate between types of tort claims by including certain alleged torts while excluding others. By its plain meaning, Section 314 provides that all tort claims filed against an Indian contractor are deemed actions against the United States, thereby entitling the Indian contractor to the full protection and coverage of the FTCA. Accordingly, plaintiff's tort claims (arising out of an alleged wrongful termination) fit under the statutory rubric, and plaintiff is presumed to know the law applicable to the processing of this claim.

Plaintiff argues that a separate section of the Indian Self-Determination and Education Assistance Act, 25 U.S.C. § 450f(d), controls the question of when an Indian contractor is deemed part of the United States for purposes of the FTCA. Section 450f(d) states that Indian contractors are deemed a federal entity when sued for death or personal injury resulting from medical or dental malpractice (filed after December 22, 1987) or for death or personal injury resulting from negligent operation of an emergency vehicle (filed after November 29, 1990). See 25 U.S.C. § 450f(d). However, the language of Section 450f(d) does not in any way nullify or limit the scope of FTCA coverage provided by Section 314.

Section 314 clearly provides for FTCA coverage of all torts stemming from the performance of Indian self-determination

- 5 -

contracts, notwithstanding the personal injury and death claims already provided coverage by Section 450f(d).[9]  That Section 314 potentially swallows up Section 450f(d) is a matter of some concern when construing the act as a whole, but to apply Section 450f(d) in disregard of Section 314 would be an error.  Furthermore, the relevant federal regulations provide separate treatment for medical claims, 25 C.F.R. §§ 900.190-203 (2000), and for non-medical claims, 25 C.F.R. §§ 900.204-210 (2000).  Specifically, 25 C.F.R. § 900.204 (2000) provides that the Federal Tort Claims Act is the exclusive remedy for a non-medical related tort claim arising out of the performance of a self-determination contract.  Accordingly, the existence of Section 450f(d) does not in any way prevent the Government from substituting itself as a defendant to plaintiff's tort claims under Section 314.

Because the Government has properly substituted itself as defendant, plaintiff's tort claims are subject to the restrictions of the FTCA.  As previously stated, plaintiff here must file an administrative claim with the Department of Health and Human Services before this court has jurisdiction to preside over his claims. 28 U.S.C. § 2401(b).  Because plaintiff has not yet filed an administrative claim, this court lacks jurisdiction over the tort claims alleged.

---

[9]     As an historical note, 25 U.S.C. § 450f(d) was formerly a part of subsection c of Section 103 of Pub. L. No. 93-638, enacted in 1975, amended in 1988 by Pub. L. No. 100-472, Section 201(b)(1), then amended again in 1990 by Pub. L. No. 101-644, Section 203(b). The above-cited Section 314 was enacted in 1990 then amended in 1993 by Pub. L. No. 103-472, Title III, Section 308.

- 6 -

## Conclusion

For the foregoing reasons, plaintiff's tort claims (Counts Two and Three and both of Counts Five in plaintiff's state court complaint) are dismissed without prejudice.

DATED at Anchorage, Alaska, this ___25___ day of April, 2001.

H. Russel Holland, Judge
District of Alaska

F01-0004--CV (HRH)
---------------------------------------------------------------
✓ P. ANDERSON
✓ M. GARBER (BIRCH)
✓ J. POMEROY (US-ATTY)

FILED

DEC 0 6 2001

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____
Deputy

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JAMES GRIFFITH,                    )
                                   )
                    Plaintiff,     )
                                   )
          vs.                      )
                                   )
YUKON KUSKOKWIM HEALTH CORP.,      )
                                   )
                    Defendant.     )        No. F01-0004-CV (HRH)
                                   )
_____

# O R D E R

## Motion for Summary Judgment

Defendant moves for summary judgment.[1]  The motion is opposed.[2]  Oral argument has not been requested and is not deemed necessary.

## Facts

Plaintiff is James Griffith, D.D.S., a former officer in the Commissioned Corps of the Public Health Service. Plaintiff was commissioned as a lieutenant commander on February 15, 1999, and ordered to report to his duty station, the Aniak Health Center in Aniak, Alaska. Defendant, the Yukon Kuskokwim Health Corporation (YKHC), operates the Aniak Health Center as a tribal contractor pursuant to the Indian Self-Determination and Education Assistance Act.

---

[1]      Clerk's Docket No. 29.

[2]      Clerk's Docket No. 30.

GOVERNMENT
EXHIBIT
B

- 1 -

A tribal contractor, such as defendant, may request that an officer of the Commissioned Corps be assigned to the contractor to assist the contractor in carrying out the provisions of its self-determination contract. See 42 U.S.C. § 2004b. On April 16, 1999, defendant and the Indian Health Service (IHS)[3] entered into a memorandum of agreement concerning plaintiff's posting to Aniak. The memorandum of agreement provides that plaintiff "is a member of the Commissioned Corps of the U.S. Public Health Service and, as such is assigned at the request of the Indian Health Service to the Aniak Health Center, Aniak, Alaska."[4]

On April 26, 1999, plaintiff began work in Aniak. Due to complaints about plaintiff's "behavior and mistreatment of patients", allegedly beginning in August of 1999, Dr. Robert J. Allen, YKHC dental director, issued a letter of reprimand to plaintiff on April 27, 2000.[5] Plaintiff responded to the letter of reprimand on May 8, 2000.[6] On the same day, YKHC wrote to Captain Don Morgan, plaintiff's superior in the Commissioned Corps, to

---

[3]     The Indian Health Service is part of the Public Health Service.

[4]     Alaska Area Memorandum of Agreement under Public Law No. 93-638, as Amended Sec. 104(b) at 1, Exhibit 5 to Affidavit of Capt. Don Morgan, which is appended to Defendant's Motion for Summary Judgment, Clerk's Docket No. 29.

[5]     Exhibit 7 to Morgan Affidavit, which is appended to Defendant's Motion for Summary Judgment, Clerk's Docket No. 29.

[6]     Exhibit 8 at 3-11 to Morgan Affidavit, which is appended to Defendant's Motion for Summary Judgment, Clerk's Docket No. 29.

- 2 -

request that plaintiff's assignment to YKHC be terminated.[7] Follow-
ing this request, plaintiff was placed on "nonduty with pay status"
while his file was reviewed by the Public Health Service.[8] During
this review process, Sue Hoeldt, plaintiff's immediate supervisor
at the Aniak Clinic, completed a commissioned officers' effective-
ness report.[9] Plaintiff's overall performance rating was a "B",
a marginal rating, and it was noted that "it is highly likely that
[plaintiff] will not succeed in any assignment in Indian Health Ser-
vice or USPHS."[10]

On June 16, 2000, Christopher Mandegran, Jr., director of
the IHS Alaska Area Native Health Service, sent a letter to the
director of the Division of Commissioned Personnel, requesting that
plaintiff's commission be terminated.[11] On June 27, 2000, R. Michael
Davidson, director of the Division of Commissioned Personnel, noti-
fied plaintiff that his commission was being terminated effective
August 15, 2000.[12] Plaintiff requested reconsideration of this

---

[7]    Exhibit 8 at 1 to Morgan Affidavit, which is appended to
Defendant's Motion for Summary Judgment, Clerk's Docket No. 29.

[8]    See Memorandum from Capt. Morgan to plaintiff, dated
May 10, 2000, Exhibit 9 to Morgan Affidavit, which is appended to
Defendant's Motion for Summary Judgment, Clerk's Docket No. 29.

[9]    See Exhibit 6 to Morgan Affidavit, which is appended to
Defendant's Motion for Summary Judgment, Clerk's Docket No. 29.

[10]    Id. at 7.

[11]    Exhibit 10 at 1 to Morgan Affidavit, which is appended to
Defendant's Motion for Summary Judgment, Clerk's Docket No. 29.

[12]    Exhibit 11 at 1, attached to Morgan Affidavit, which is
appended to Defendant's Motion for Summary Judgment, Clerk's Docket
No. 29.

- 3 -

decision, but his request was denied.[13] The order formally termi-
nating plaintiff was issued June 29, 2000, and took effect on
August 15, 2000.[14]

On January 30, 2001, plaintiff filed suit in the Superior
Court for the State of Alaska at Bethel alleging claims of:
(1) wrongful termination; (2) intentional infliction of emotional
distress; (3) negligent infliction of emotional distress; (4) breach
of the implied covenant of good faith and fair dealing; (5) negli-
gent reprimand; and (6) defamation. The United States substituted
itself for YKHC as to the tort claims and removed the action to this
court.

Once the case was removed, the United States moved to dis-
miss plaintiff's tort claims for failure to exhaust administrative
remedies. The United States' motion was granted, and plaintiff's
tort claims were dismissed.[15] At the same time, YKHC moved to dis-
miss plaintiff's contract claims on the ground that plaintiff was
never employed by YKHC. Although the court expressed serious doubts
that plaintiff was ever employed by YKHC, the court denied YKHC's
motion and gave plaintiff leave to amend his complaint "for purposes

---

[13] See Letter from R. Michael Davidson to plaintiff (July 25,
2000), Exhibit 12 at 1, attached to Morgan Affidavit, which is
appended to Defendant's Motion for Summary Judgment, Clerk's Docket
No. 29.

[14] Termination Order at 1, Exhibit 13 to Morgan Affidavit,
which is appended to Defendant's Motion for Summary Judgment,
Clerk's Docket No. 29.

[15] See Order re United States' Motion to Dismiss (Apr. 26,
2001), Clerk's Docket No. 19.

- 4 -

of asserting a cause of action against YKHC which is not dependent upon a direct employment relationship."[16]

On May 18, 2001, plaintiff filed his amended complaint against YKHC.[17]  Plaintiff alleges two claims, one for wrongful termination and one for a breach of the implied covenant of good faith and fair dealing.  As noted in the court's earlier order on YKHC's motion to dismiss,[18] these are contract claims.  In his amended complaint, plaintiff alleges that he was a "special employee" of YKHC and thus had a contract with YKHC.  Defendant now moves for summary judgment dismissing plaintiff's claims.

## Discussion

The issue here is whether plaintiff can assert contract claims against defendant based on plaintiff's alleged status as a "special employee" of defendant.  Plaintiff's claim that he was a "special employee" of defendant is based on his allegations that defendant assigned his duty station, provided him with office space and materials, procured his patients, provided him with a support staff including a receptionist and dental hygienist, set his work schedule, and controlled the details of the performance of his employment services.[19]  Plaintiff further alleges that the services

---

[16]     Order re YKHC Motion to Dismiss at 2 (Apr. 26, 2001), Clerk's Docket No. 18.

[17]     Clerk's Docket No. 23.

[18]     Order re YKHC Motion to Dismiss at 1-2 (Apr. 26, 2001), Clerk's Docket No. 18.

[19]     Amended Complaint at 2-3, ¶ 10, Clerk's Docket No. 23.

- 5 -

he provided during his employment at Aniak were for the exclusive benefit of defendant.[20]

In his amended complaint, plaintiff only raised allegations of a "special" employment relationship as a basis for his contract claims against defendant. In his opposition to the instant motion, plaintiff advances a second reason why defendant may be liable in contract, namely that the United States assigned plaintiff's contract to defendant and thus plaintiff was placed in a direct contractual relationship with defendant. As proof of this assignment, plaintiff points to the memorandum of agreement between the IHS and defendant which states that the IHS and defendant are entering into the agreement "for the assignment of LCDR James F. Griffith[.]"[21]

The argument that plaintiff's federal employment contract was assigned to defendant fails because plaintiff did not have a contract with the federal government that could be assigned to defendant. "[F]ederal employees serve by appointment, not by contract." Riplinger v. United States, 695 F.2d 1163, 1164 (9th Cir. 1983).

We turn then to plaintiff's theory that defendant can be liable to plaintiff in contract, based on plaintiff's allegations that he was "special employee" and that defendant was his "special employer". "Special employees" are more commonly referred to as

_____

[20]  Id. at 3, ¶ 10.

[21]  Memorandum of Agreement at 1, Exhibit 5 to Morgan Affidavit, which is appended to Defendant's Motion for Summary Judgment, Clerk's Docket No. 29.

- 6 -

"borrowed servants" or "loaned servants." The "borrowed servant" doctrine arises when an employee is directed or permitted by his employer to perform services for another such that the employee becomes the "servant" of the other. Reader v. Ghemm Co., 490 P.2d 1200, 1203 (Alaska 1971), abandoned on other grounds, Kastner v. Toombs, 611 P.2d 62 (Alaska 1980). The decisive question in determining whether or not the servant has been loaned or is borrowed is one of control by the borrowing master. Id.

Plaintiff insists that he was a special employee of defendant because he was assigned to defendant, was doing the work of defendant, was subject to defendant's internal rules and policies, was provided clients and office space by defendant, and was subject to performance reviews by defendant. Plaintiff argues that it is therefore clear that defendant asserted sufficient control over plaintiff for him to be considered a borrowed servant of defendant. Plaintiff points out that even the memorandum of agreement that defendant entered into with the United States provides that "[t]he rules and policies governing the internal operation and management of the tribal organization to which assigned will apply to the officer."[22] The memorandum of agreement also provides that "[r]eports on the efficiency and performance of the assigned officer will be

---

[22]   Blank Memorandum of Agreement at 5, Section VI.A, Exhibit 3 to Plaintiff's Opposition to Motion for Summary Judgment, Clerk's Docket No. 30. (This page was missing from the signed Memorandum of Agreement submitted by defendant in support of its Motion for Summary Judgment. Defendant's counsel avers this omission was inadvertent. See Affidavit of Max D. Garner in Support of Reply at 2-3, ¶¶ 2-4, attached to Defendant's Reply, Clerk's Docket No. 32.)

- 7 -

submitted annually by the tribal organization supervisor (rating official) to the Federal supervisor ... who is the reviewing official."[23] In addition, the memorandum provides that "[h]ours of duty are to be determined in agreement by the tribal organization and the officer."[24]

Plaintiff relies on Harris v. Miller, 438 S.E.2d 731 (N.C. 1994), in which the court, under the doctrine of respondeat superior, held a nurse anesthetist was a borrowed servant of a surgeon. The court observed that:

> whether the lent servant is a specialist, which employer supplies the instrumentalities used to perform the work, the nature of those instrumentalities, the length of the employment, the course of dealing between the parties, whether the temporary employer has the skill or knowledge to control the manner in which the work is performed and whether the temporary employer in fact exercises such control. Of these, the actual exercise of control is the most weighty.

Id. at 736. Plaintiff argues that applying these standards to the facts of this case leads to a conclusion that he was a borrowed servant or special employee of defendant.

Defendant appears to argue that plaintiff cannot be a special employee because the federal government, his general employer, received benefit from plaintiff's employment because of the federal government's trust responsibilities toward Alaska Natives. These trust responsibilities are not diminished or extinguished when the government contracts with a tribal organization, as it did here with

---

[23]  Id. at Section VI.E.

[24]  Id. at 3, Section V.A.

- 8 -

defendant, to provide health care services. See 25 U.S.C. § 450n.
Defendant argues that it is totally irrelevant whether plaintiff was
working at a clinic owned by a tribal organization or one owned by
the federal government because plaintiff was still working within
the scope of his federal employment and thus was not a special
employee. See Ward v. Gordon, 999 F.2d 1399, 1404 (9th Cir. 1993)
(holding that Army doctor who was working in privately-owned hospi-
tal at the direction of his superiors was working within the scope
of his federal employment).

Defendant's reliance on Ward seems somewhat misplaced.
In Ward, the court held that the doctor, who was an Army officer,
was a borrowed servant under the laws of Washington state, but that
the doctor's status as a borrowed servant "does not render his
conduct outside the scope of his government employment...." Id. at
1404. Thus, it is possible that a federal employee may be acting
within the scope of his federal employment, as defendant urges
plaintiff was doing here, but that the employee can still be a
borrowed servant, as plaintiff urges here. Arguably, plaintiff has
raised a question of fact (although not a material one) as to
whether or not he was a special employee of defendant.

As defendant next argues, even if plaintiff were a "spe-
cial employee" of defendant, plaintiff still cannot assert contract
claims against defendant. Defendant claims that under Alaska law,
the concept of a "borrowed" or "loaned" servant applies only in tort
cases, not contract cases. See, e.g., Kastner 611 P.2d 62 (explain-
ing that under doctrine loaning master is not liable for servant's

- 9 -

negligence). In fact, defendant argues that the Alaska Supreme Court has ruled that when an employer directs an employee to provide services to a third party, the third party does not become an "employer."

> The relationship of employer-employee can only be created by a contract, which may be express or implied. Once created, the relationship cannot be changed to substitute another employer without the employee's consent. The employee must have understood and agreed before there can be any transfer to another employer. Where the employee commences to serve another at the direction of his employer, no new relationship is necessarily created. He may simply be performing his duty to the employer who gave the order. Even though his actions may be controlled by the new master, no new relationship is created in the absence of an express or implied contract between the employee and the new master. Consent of the employee to a change in masters cannot be implied merely from his obedience to the order of his master.

Selid Constr. Co. v. Guarantee Ins. Co., 355 P.2d 389, 393 (Alaska 1960) (footnotes omitted).

Defendant submits that no Alaska case has allowed a borrowed or loaned servant to assert contract claims against the borrowing master. Defendant further maintains that his counsel, after a diligent search, was able to find only one case where the issue was even discussed, Janusz v. Fasco Industries, No. 97C-7976, 1998 WL 246449 (N.D. Ill. May 1, 1998). In Janusz, the plaintiff was employed by Fasco Industries as a tax accountant and performed work for Fasco's two parent companies. The plaintiff sued both Fasco and its parent companies for retaliatory discharge. The parent companies moved for summary judgment on the ground that they

- 10 -

had never been plaintiff's employer. The plaintiff argued that he could have been a borrowed servant, that he could have been serving two masters, or that he could have been a "subservant" of the two parent companies. The court rejected all of these arguments because the plaintiff had failed to offer and the court could not find "any case law[] to support the novel theory that the owners of a company for whom one is employed may be held liable as the 'employer' for purposes of retaliatory discharge." Id. at *4. Likewise, defendant here urges the court to reject plaintiff's novel theory that his borrowing master is liable for wrongful termination or breach of the implied covenant of good faith and fair dealing.

Plaintiff makes no argument on this issue and offers no authority to support his contention that as a special employee he can assert contract claims against his special employer. Plaintiff's entire opposition is devoted to his argument that defendant exercised extensive control over him. Be that as it may, it does not establish that plaintiff can assert a contract claim against defendant.

The court concludes that the concept of a "borrowed" or "loaned" servant applies only in tort cases. Plaintiff has offered no authority to support his contention that merely because he is a special employee he must have had a contract with his special employer, such that he could assert contract claims against that employer. The court has found no authority that stands for the proposition that a borrowed servant has a contract with the borrowing master, such that the borrowed servant could sue the borrowing mas-

- 11 -

ter for wrongful termination and a breach of the implied covenant of good faith and fair dealing. There are cases holding that a borrowing employer can be considered a statutory employer for worker's compensation purposes, see, e.g., Vanterpool v. Hess Oil V.I. Corp., 766 F.2d 117, 125-126 (3d Cir. 1985); but that is different from holding that a borrowing employer can be held liable for wrongful termination and other contract claims. Thus, as a matter of law, plaintiff's contract claims against defendant must be dismissed.

Conclusion

Defendant's motion for summary judgment is granted. The clerk of court shall enter judgment dismissing plaintiff's amended complaint with prejudice.

DATED at Anchorage, Alaska, this _____ day of December, 2001.

H. Russel Holland, Judge
District of Alaska

F01-0004--CV (HRH)
--------------------------------------------------------
P. ANDERSON
N. GARBER (BIRCH)

- 12 -

FILED

DEC 7 2001

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____ Deputy

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

JAMES GRIFFITH,
          Plaintiff,

                                    Case Number F01-0004CV (HRH)

v.

YUKON KUSKOKWIM HEALTH CORP,
          Defendant.          **JUDGMENT IN A CIVIL CASE**

____ **JURY VERDICT**.  This action came before the court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

__X__ **DECISION BY COURT**.  This action came to trial or hearing before the court.  The issues have been tried or heard and a decision has been rendered.

          IT IS ORDERED AND ADJUDGED:

          THAT plaintiff's amended complaint is dismissed with prejudice.

APPROVED:

_____
H. Russel Holland
United States District Judge

December 7, 2001
Date

                              _____
                                    Michael D. Hall
                              Clerk

                              _____
                              (By) Deputy Clerk

F01-0004-CV (HRH)
-----------------------------------------
P. ANDERSON
A/ GARNER (BIRCH)
J&J file

GOVERNMENT
EXHIBIT
C